UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MALLIN, et. al. <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL CITY MORTGAGE INC., et al., and DOES 1-200, inclusive, <br><br> Defendants. | No. 05-1499 SC <br><br> ORDER GRANTING IN PART PLAINTIFFS' MOTION TO ENFORCE <u>ORDER AND JUDGMENT</u> |

## I. **INTRODUCTION**

Plaintiffs, former telemarketing loan originators, brought this action against their former employer, Defendants National City Mortgage Inc., National City Mortgage Co., and City Bank of Indiana ("Defendants" or "National City"), alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §201 <u>et</u> <u>seq.</u> ("FLSA"), and state labor laws by improperly classifying loan originators as "exempt" employees and failing to pay overtime and minimum wages. <u>See</u> Compl., Docket No. 1. In July 2005, the Court conditionally certified this matter as a collective action for the purpose of issuing notice. <u>See</u> Docket No. 33.

Following conditional certification, the parties participated in mediation. The mediation was successful and the parties

1  subsequently moved the Court to approve a settlement agreement.
2  See Docket No. 74.  After a preliminary fairness hearing, the
3  Court approved the settlement.  See Docket No. 112.
4      Now before the Court is Plaintiffs' Motion to Enforce Order
5  and Judgment.  Docket No. 113.  Defendants opposed the motion, and
6  Plaintiffs replied to that Opposition.  See Docket Nos. 118, 121.
7  Having considered the submissions of both parties, the Court
8  GRANTS IN PART Plaintiffs' motion.

10  **II.  BACKGROUND**

11      The final terms of the parties' agreement are contained in
12  the Amended Stipulation of Class Action Settlement, dated April
13  25, 2006 (the "Settlement Agreement").[1]  Pursuant to the
14  Settlement Agreement, Defendants were to "pay no more than five
15  million dollars ($5,000,000)" into a settlement fund.  Settlement
16  Agreement, § IV.A.  Defendants did this on September 12, 2006.
17  Heverly Decl., ¶ 5.  The Claims Administrator, CPT Group
18  ("Administrator") was then supposed to calculate the appropriate
19  disbursement to each member of the class and prepare a written
20  report documenting the calculations for counsel, who would have
21  ten days to review the report and comment before the Administrator
22  finally sent checks to the Plaintiffs.  See Settlement Agreement,

---

[1] The Settlement Agreement is attached as Exhibit A to Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Enforce Order and Judgment ("Pl.'s Mem."), and as Exhibit A to the Declaration of Michelle B. Heverly in Support of Defendants' Opposition to Plaintiffs' Motion to Enforce Order and Judgment.  See Docket Nos. 114, 120.  Further citations to this document will refer to it solely as the "Settlement Agreement."

§§ V.A, VIII.B, VIII.F.

The Settlement Agreement includes a complicated formula for determining each individual class member's share of the settlement funds. See Formula Exhibit to Settlement Agreement ("Formula"). Each class member was entitled to collect an "Overall Claim" which was the sum of the "Gross Overtime Claim," sixty percent of the "Gross Waiting Time Penalty Claim," forty percent of a "Gross Liquidated Damages Claim," as well as other figures not material to this stage of the dispute. See id. The Gross Waiting Time Penalty Claim was to be determined, for eligible class members, "by taking the average monthly adjusted hourly rate for the last year of employment, multiplying it by 240." Id. The Gross Liquidated Damages Claim was to be calculated by "taking the Gross Overtime Claim . . . and multiplying that number by two (2)." Id.

The Administrator never calculated the gross payment due to each class member for the Overall Claim. Supplemental Decl. of Julie Green ("Green Supp. Decl."), ¶ 3. Rather, Defendants performed the calculations to determine the gross payments and provided that information to the Administrator, who then calculated net payments reflecting the applicable tax withholdings. Id.; Decl. of Julie Green ("Green Decl."), ¶ 2; Additional Supplemental Decl. of Julie Green ("Green Add'l Decl."), ¶ 3; Decl. of Julie Green In Support of Def.'s Opp'n ("Green Opp'n Decl."), ¶ 7.[2]  In January 2007, the Administrator

---

[2] Defendants maintain that the calculations they provided the Administrator in December 2006 were intended to be examples, not final calculations, and that the Administrator was supposed to make the final calculations for each class member. Heverly Decl., ¶ 6,

3

sent payments to each class member based on the gross payment figures provided by Defendants. Green Decl., ¶ 2; Green Supp. Decl., ¶ 2; Green Add'l. Decl., ¶ 2.

Plaintiffs challenge two aspects of Defense Counsel's calculations. First, Defense Counsel set each class member's Gross Liquidated Damages Claim equal to that class member's Gross Overtime Claim. Second, Defense Counsel determined each class member's Gross Waiting Time Penalty Claim based on the last calendar year in which the class member was employed, rather than the last twelve months in which the class member was employed. The parties do not dispute that this was the method Defense Counsel used, but rather whether this method was what the Settlement Agreement provided for. Therefore, determination of whether Defendants' calculations are correct turns on the interpretation of the Settlement Agreement.

Plaintiffs also assert that, should the Court agree with their interpretation of the Settlement Agreement, the appropriate remedy would be for Defendants to pay any class member whose total disbursement was reduced by the incorrect calculations the difference between what he or she actually received and what he or she would have received had Defendants calculated the gross payment correctly. Defendants, while maintaining that all of their calculations comply with the Settlement Agreement, argue

---

Ex. B. According to the Administrator, Defense Counsel did not provide the requisite information to complete the calculations and instructed the Administrator not to calculate the gross payments. Green Add'l Decl, ¶ 3. The Court need not resolve the dispute at this juncture.

4

1  that Plaintiffs and the Administrator are responsible for any
2  incorrect distribution, and that Defendants cannot be required to
3  pay more than the $5,000,000 total contribution set forth in the
4  Settlement Agreement.

## III. DISCUSSION

This dispute requires the Court to interpret two provisions of the Formula attached to the Settlement Agreement. The first governs calculation of the Gross Liquidated Damages Claim; the second governs calculation of the Gross Waiting Time Penalty Claim.

Section XI.G of the Settlement Agreement states:

> This STIPULATION and the exhibits attached hereto constitute the entire agreement between the PARTIES concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of the STIPULATION.

Settlement Agreement, § XI.G. Therefore, because the Settlement Agreement is integrated, parol evidence is only admissible if the Settlement Agreement is in some way ambiguous. See e.g., Consol. World Invs., Inc. v. Lido Preferred, Ltd., 11 Cal. Rptr. 2d 524, 526-27 (Ct. App. 1992). However, as Defendants note, under California law, parties may introduce evidence to prove a latent ambiguity in the terms of a contract. See, e.g., Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 442. P.2d 641, 644 (Cal. 1968) ("The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the

1 offered evidence is relevant to prove a meaning to which the
2 language of the instrument is reasonably susceptible."). The
3 Court therefore must consider not only whether the Settlement
4 Agreement is ambiguous, but also whether it is "reasonably
5 susceptible" to the interpretations Defendants advance, and
6 whether the evidence Defendants offer supports their
7 interpretation adequately.

### A. Gross Liquidated Damages

According to the Formula, the Gross Liquidated Damages Claim for each class member is determined as follows:

> 5. <u>Liquidated Damages</u>.  Only those individuals who have "opted in" to the FLSA Collective action within the required time period will be entitled to Liquidated Damages. This claim will be calculated by taking the GROSS OVERTIME CLAIM applicable to the three years preceding the filing of their "opt in" form (or being named in this lawsuit, whichever is earlier) and multiplying that number by two (2).  The product will constitute the GROSS LIQUIDATED DAMAGES CLAIM.

Formula, ¶ 5. Plaintiffs assert that this language is clear and unambiguous, and that the Gross Liquidated Damages Claim should be double the Gross Overtime Claim. Defendants assert that the phrase "and multiplying that number by two (2)" is a typographical error which causes the Settlement Agreement to deviate from the parties' intent, and that the Gross Liquidated Damages Claim should be equal to the Gross Overtime Claim, such that the total of the two is double the Gross Overtime Claim.

The Court agrees with Plaintiffs that the phrase "and multiplying that number by two (2)" is clear and unambiguous on its face. Absent a showing by Defendants of latent ambiguity and

6

1 evidence supporting Defendants' proposed resolution of that
2 ambiguity, the Court will not deviate from this language.
3     Defendants provide two arguments in support of their
4 interpretation of this provision.  The Court addresses, and
5 dismisses, the arguments seriatim.  First, Defendants argue that
6 the Settlement Agreement must contain a typo because its terms
7 deviate from the gross liquidated damages remedy established in
8 the FLSA.  <u>See</u> Opp'n at 7.  Where an employer willfully violates
9 the FLSA, the statute provides that the employer may be liable for
10 "the payment of wages lost and an additional equal amount as
11 liquidated damages."  29 U.S.C. § 216(b).  Because the FLSA
12 provides for liquidated damages equal to the lost wages claim,
13 Defendants argue, the Settlement Agreement must provide the same
14 remedy, despite the plain meaning to the contrary.  Defendants
15 offer no basis for this argument.  Nothing in the Settlement
16 Agreement or the Formula ties the calculation of damages, or any
17 other remedy for that matter, to the provisions of the FLSA.
18 There is no judgment against Defendants under the FLSA, and in the
19 Settlement Agreement, Defendants explicitly deny having violated
20 the FLSA.  <u>See</u> Settlement Agreement, § I.D.  In other words, there
21 is no basis for tying the remedy in this matter, as set forth in
22 the Settlement Agreement, to the provisions of the FLSA.
23 Defendants provide no authority whatsoever which suggests that the
24 parties could not have negotiated a remedy which deviates from the
25 statute.  In fact, the Formula provides a remedy which is more

1  favorable to Defendants than the FLSA remedies.[3]

2  Defendants' second argument against the plain meaning of the
3  words in the Settlement Agreement is equally meritless.  According
4  to Defendants, the parties never discussed a settlement in which
5  the Gross Liquidated Damages would be double the Gross Overtime
6  Claim.  See Opp'n at 8.  Defendants assert that in the
7  negotiation, the parties used sample calculations reflecting
8  liquidated damages equal to the Gross Overtime Claim.  Even if
9  this were the case, Defendants provide no evidence to support it.
10 Defense Counsel's declaration (which Defendants' brief does not
11 actually cite on this issue) states that during extensive
12 settlement negotiations, the parties exchanged numerous
13 spreadsheets with possible settlement calculations, none of which
14 doubled the Gross Overtime Claim.  Heverly Decl., ¶ 3.  These
15 spreadsheets might have been highly probative, had they been
16 offered into evidence.  Counsel further insists that Defendants
17 would never have agreed to the provision as it stands, and that
18 she believes Plaintiffs and Plaintiffs' Counsel would agree if
19 forced to testify on that matter.  Id.

20 If the Formula said "multiplying by three (3)" and Defendants
21 asserted they only intended to multiply by two, that would be a
22 plausible typographical error.  The Court finds no typo in the

---

[3] According to the Formula, each class member is to recover the Gross Overtime Claim plus forty percent of the Gross Liquidated Damages Claim.  A class member entitled to a Gross Overtime Claim of $100 would receive an additional $100 of liquidated damages under the FLSA, for a total recovery of $200.  Under the plain terms of the Settlement Agreement, the same class member would receive $100 for his Gross Overtime Claim plus forty percent of his Gross Liquidated Damages Claim, or $80, for a total of $180.

8

wording of the Gross Liquidated Damages Claim section of the Formula.  Against the unambiguous terms of an integrated contract negotiated, reviewed, and executed by both parties, Defense Counsel's declaration is insufficient to persuade the Court that the determination of the Gross Liquidated Damages Claim should be calculated in any way other than that provided by the Formula.[4]

**B.    Gross Waiting Time Penalty Claim**

The dispute over the calculation of the Gross Waiting Time Penalty Claim is less clear than that over the Gross Liquidated Damages Claim.  Pursuant to the Formula, the Gross Waiting Time Penalty Claim should be calculated as follows:

> 4.  <u>Waiting Time Penalties</u>.  Only those individual Settlement Class Members whose employment was ever terminated (irrespective of whether they were re-employed) between April 12, 2002 and April 11, 2005 will be entitled to Waiting Time Penalties.  The Penalties will be calculated by taking the average monthly ADJUSTED HOURLY RATE for the last year of employment, multiplying it by

---

[4] Although the sworn statement of a party's counsel, as an officer of the court, carries great weight, Defense Counsel's declaration is internally inconsistent and unpersuasive.

For example, Counsel states that, "In preparing the sample calculation spreadsheet, I calculated the liquidated damages based on a doubling of the overtime amounts, as is consistent with the law and based on my recollection of the settlement terms."  Heverly Decl., ¶ 7.  This is specious.  The only way Counsel's calculations amount to a doubling is if the Court reinterprets the word "double" to mean "equate."  Defendants' entire position is that they should not have to double the Gross Overtime Claim because the law does not require them to do so.  If Defendants wish the Court to redefine "double" they must provide more support than their own post-settlement usage as a basis for doing so.

Counsel also states that prior to January 2007, she had never spoken with Julie Green, who works for the Administrator and calculated the net payments for each Plaintiff.  Supplemental Decl. of Michelle B. Heverly, ¶ 4.  However, attached to Counsel's first declaration is an email Counsel wrote, on which Green was copied, sent on November 17, 2006.  Heverly, Decl., Ex. B.

9

>     240.  This product will constitute the GROSS
>           WAITING TIME PENALTY CLAIM.

Formula, ¶ 4.  Plaintiffs argue that "last year of employment" refers to the "last 12 months of employment."  Pl.'s Mem. at 6.  Defendants argue that the term refers to the "last calendar year."  Opp'n at 9.  As Defendants note, under California law, "the words of a contract are to be understood in their ordinary and popular sense. . . ."  Cal. Civ. Code. § 1645.  However, each party asserts that its own interpretation is the plain meaning.

Here the Court is faced with a legitimate ambiguity in the terms of the Settlement Agreement, which the parties have offered no assistance in resolving.  Neither party provides any support, even in the form of pure rhetorical argument, for the assertion that its interpretation is the plain and ordinary meaning.  The term is reasonably susceptible to either interpretation,[5] but neither party offered any parol evidence.  Neither the Settlement Agreement nor the Formula sheds any further light on the issue.

The Court concludes that Plaintiffs' interpretation is most reasonable.  The appropriate phrase to define is "last year of employment," rather than simply "year."  Defendants' approach requires the Court to read a limiting description -- "calendar" -- into the Formula without basis.  A calendar year is but one type of year.  There are other types of year, such as fiscal year,

---

[5] Even a dictionary is of little use in resolving this dispute.  For example, the American College Dictionary provides thirteen definitions of the word "year," including "a period of 365 or 366 days, divide into 12 calendar months, now reckoned as beginning Jan. 1 and ending Dec. 31 (**calendar year**)" and "a space of 12 calendar months reckoned from any point."  AM. COLLEGE DICTIONARY 1414 (1970) (emphasis in original).

10

school year, tax year, lunar year, etc.  Employment is not inherently, or even generally, associated with any specific type of year, and certainly not with the calendar year.  Where there is no evidence or context supporting the use of a calendar year, doing so would be as inappropriate as using any other specific type of year.  Rather, the use of "last year of employment" suggests that the Gross Waiting Time Penalty Claim should be calculated based on the last twelve months of the class member's employment with Defendants.

### C.  Timeliness

Defendants argue that Plaintiffs' motion is untimely because the Settlement Agreement provides for a refund of any remaining money in the settlement account six months following the distribution of settlement checks.  Opp'n at 11.  Specifically, Section IV.C provides:

> Not later than twenty (20) days following the EFFECTIVE DATE, NATIONAL CITY shall segregate the SETTLEMENT CONSIDERATION in an internal earmarked account in the ADMINISTRATOR'S name (the "SETTLEMENT ACCOUNT").  Six (6) months following the distribution of SETTLEMENT checks described herein in Section VIII, the ADMINISTRATOR shall be entitled to close the SETTLEMENT ACCOUNT and refund to NATIONAL CITY any funds remaining therein.

Settlement Agreement, § IV.C.  Defendants' argument fails for a number of reasons.  First, the Settlement Agreement only says that the Administrator "is entitled to" close the account and return the funds after six months, not that it "shall" do so, as Defendants claim.  Id.; see Opp'n at 11.  Second, the Administrator is only entitled to close the account and return the

11

1 remainder to Defendants after the distribution of settlement
2 checks described in Section VIII.  Section VIII describes the
3 claims procedure in detail; provisions contained in that section
4 address the means of calculating and distributing payments to the
5 Plaintiffs.  It is now clear that the settlement funds were not
6 properly distributed.  As such, the condition precedent to closing
7 the settlement account has not occurred, and the Administrator is
8 therefore not yet entitled to return the funds to Defendants.

9  Even had the distribution been proper, the Administrator
10 would not have been entitled to close the account yet.  Defendants
11 authorized payment of an additional $175,000 from the settlement
12 fund to correct deficient payments to four Plaintiffs on April 2,
13 2007.  Heverly Decl., ¶ 12.  At the very earliest, then, absent
14 any further dispute regarding the distribution, the Administrator
15 had not complied with Section VIII until April 2, and was not
16 entitled to close the settlement account and return the funds
17 until October 2.  Plaintiffs timely filed the instant motion on
18 July 12, 2007.

**D.   Attorney's Fees**

Each party seeks to recover its attorney's fees should it prevail on this motion.  The Settlement Agreement provides:

> In the event that legal action arises out of this STIPULATION or is necessary to enforce any of the terms or provisions of this STIPULATION, the prevailing party in the action shall be entitled to recover its reasonable attorney's fees and costs.

Settlement Agreement, § XI.J.  Plaintiffs claim they have incurred $32,061.50 in attorney's fees in pursuing this issue.  Simon

12

1  Decl., ¶¶ 7-11. To the extent that the Court has adopted their
2  interpretation of the Settlement Agreement and Formula, Plaintiffs
3  have prevailed, and are therefore entitled to recover their
4  attorney's fees. Defendants argue that this fee request is
5  unreasonable and includes work not related to this motion, the
6  only "legal action" for which Plaintiffs should be entitled to
7  recover fees. The Court disagrees. Fees for all of the work done
8  by Plaintiffs' Counsel in determining the deficiencies in the
9  settlement payments, attempting to resolve the matter without
10 bringing a motion, and preparing and arguing this motion are
11 recoverable. Had Defendants complied with the Settlement
12 Agreement in the first place, a motion to enforce would not have
13 been necessary. The Settlement Agreement authorizes the Court to
14 make this award. The Court therefore AWARDS Plaintiffs $32,061.50
15 in attorney's fees.

**IV.  CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' Motion to Enforce Order and Judgment and ORDERS as follows:

1. The parties are to appear for a hearing on the remaining issues on Friday, December 14, 2007, at 10:00 a.m.
2. Prior to the December 14 hearing, the parties shall calculate the correct award to each class member based on the Court's interpretation of the Formula.
3. In the event that the funds remaining in the settlement account following the April 2, 2007, disbursement are

13

1 insufficient to make whole any class member who was
2 underpaid, the parties shall be prepared to discuss at
3 the hearing appropriate procedures for redistribution of
4 the settlement funds.
5 4. Defendants shall pay Plaintiffs attorney's fees in the
6 amount of $32,061.50.

8 IT IS SO ORDERED.

10 November 26, 2007



UNITED STATES DISTRICT JUDGE

14